IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD CESSNA, on behalf of himself and all others similarly situated; and GEORGE WORK, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>REA ENERGY COOPERATIVE, INC.,<br><br>Defendant. | CIVIL ACTION NO. 3:16-42<br><br>JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION AND ORDER

**I.  Introduction**

Before the Court in this matter is a motion to remand filed by Plaintiffs Leonard Cessna and George Work, on behalf of themselves and all others similarly situated. (ECF No. 14.) This matter has been fully briefed (*see* ECF Nos. 15, 20, 23) and is ripe for disposition. For the reasons that follow, Plaintiffs' motion to remand will be **DENIED**.

**III.  Background**

Plaintiff initiated the instant action by filing a complaint in the Court of Common Pleas of Blair County, Pennsylvania, on December 31, 2015. (*See* ECF No. 1-1 at 4.) Defendant removed the action to this Court on February 11, 2016. (ECF No. 1.) The following facts are alleged in the complaint, which the Court will accept as true for the sole purpose of deciding the pending motion.

1

Defendant is a domestic non-profit corporation that provides residential and business electrical service to its 22,000 members in Armstrong, Blair, Cambria, Clearfield, Indiana, Jefferson, and Westmoreland counties. (ECF No. 1-1 ¶ 3.) Plaintiff Cessna has been Defendant's member for approximately thirty years, and Plaintiff Work, who withdrew his membership with Defendant in 2011, was a member for approximately fifty years. (*Id.* ¶¶ 1-2.) Plaintiffs own Patronage Capital representing "margins," or profits, that are specifically allocated to each of Defendant's members in a separate account. (*Id.* ¶¶ 1-2, 5.) The amount of Patronage Capital that each of Defendant's members earn is based upon his or her annual electric usage. (*Id.* ¶ 5.)

Plaintiffs have filed a class action on behalf of a class of current and former members ("the members") of Defendant, a rural electric cooperative. (*Id.* ¶¶ 4, 6.) The members own an interest in Defendant worth more than $53,000,000. (*Id.* ¶ 6.) Because the members cannot sell or redeem their interest in Defendant as stockholders in a publicly traded corporation can, they are "at the mercy of [Defendant] when it comes to receiving a financial distribution of their accumulated Patronage Capital." (*Id.*)

As a cooperative, Defendant is prohibited from making a profit on business conducted with the members. (*Id.* ¶ 9.) The difference between Defendant's revenues and expenses is therefore considered to be "margins," rather than profits, that belong to its members in the form of Patronage Capital. (*Id.* ¶¶ 9-10.) Because the Patronage Capital does not become Defendant's property, Defendant acts merely as the agent or trustee of the members to account for the Patronage Capital that belongs to them. (*Id.* ¶ 10.)

According to Defendant's by-laws, its articles of incorporation and by-laws constitute a contract between it and each member. (*Id.* ¶ 11.) Plaintiffs believe and therefore aver that Defendant does not provide the members with a copy of its articles of incorporation. (*Id.* ¶ 12.) Defendant's by-laws further require that it shall operate at all times on a cooperative non-profit basis for the mutual benefit of the members. (*Id.* ¶ 14.) Article VIII of Defendant's by-laws provides that Defendant is obligated to account on a patronage basis to the members for all amounts received and receivable from the furnishing of electric energy and service, with the understanding that all amounts in excess of operating costs and expenses are furnished to the members as capital. (*Id.* ¶¶ 13, 16.) The principle that the members receive capital in proportion to their use of the cooperative is referred to as the "user-owner principle." (*Id.* ¶ 15.) The members receive the Patronage Capital if the Board of Directors determines that Defendant's financial condition will not be impaired by crediting the capital in full or in part to the members' accounts. (*Id.* ¶ 13.)

Defendant's members each have an account in his, her, or its name that reflects a credit or debit for each year the member was or continues to be Defendant's member. (*Id.* ¶ 17.) Each Patronage Capital account has a cumulative balance that, pursuant to the user-owner principle, represents the capital that each member furnished for the cooperative's use. (*Id.*) Patronage Capital is therefore temporary equity capital that must be returned to its owners. (*Id.* ¶ 23.) Because Defendant acts in the capacity of an agent or trustee for the members, its obligation to return the Patronage Capital to the members arises from the fiduciary nature of its relationship with them. (*Id.* ¶ 18.) Federal tax law

also requires that Defendant return the Patronage Capital to the members because margins of a cooperative are excluded from the cooperative's taxable income only when there is a binding, pre-existing legal obligation of the cooperative to refund all margins to its members. (*Id.* ¶ 22.) Although a cooperative may retain its members' Patronage Capital temporarily for use of capital, it may not indefinitely keep it. (*Id.*)

Defendant's by-laws, which grant the Board of Directors discretion to determine whether to return the Patronage Capital to the members, conflict with 15 Pa.C.S. § 7330, which provides that the revenues of non-profit entities must be returned to members "from time to time." (*Id.* ¶¶ 19-20.) In interpreting the phrase "from time to time," the Supreme Court of Pennsylvania has held that it "'intends a reasonable and just grant of power, not a power to be exercised arbitrarily, indiscriminately, and without regard to the interest of those for whom benefits were intended.'" (*Id.* ¶ 21 (quoting *Consumers Educ. & Protective Ass'n v. Schwartz*, 432 A.2d 173, 179 (Pa. 1981).)

Pursuant to Defendant's by-laws, the members' Patronage Capital accounts are non-transferrable, cannot appreciate in value, and do not accrue interest. (*Id.* ¶ 24.) As a result of inflation and the time value of money, the value of the Patronage Capital declines when Defendant retains it before retiring and returning it to the members. (*Id.*) The delay amounts to a "taking" of a significant portion of the members' Patronage Capital if interest does not accrue on the members' Patronage Capital accounts. (*Id.*) Plaintiffs believe and therefore aver that Defendant is earning interest on the Patronage Capital of the members and is not allocating the earned interest back to them. (*Id.* ¶ 25.)

After Defendant failed to retire the Patronage Capital for over fifty years, its retirement of the Patronage Capital in 2011 applied only to those members who had service with Defendant before 1961. (*Id.* ¶ 26.) Because Defendant failed to return the Patronage Capital to the members from 1937 until 2011, it has unjustly utilized interest-free money for over fifty years and has denied the members the fair value of and compensation for their Patronage Capital. (*Id.*) Defendant has refused to use available cash, specifically set aside as Patronage Capital, to timely and appropriately refund the members. (*Id.* ¶ 28.) In its 2014 annual financial report, Defendant had amassed over $53,000,000 specifically designated as Patronage Capital. (*Id.*) Defendant's retention of the Patronage Capital increases the likelihood that it will be unable to locate the members, which will result in the escheat of the unclaimed capital to Defendant. (*Id.* ¶ 27.)

Plaintiffs believe and therefore aver the following: (1) the Patronage Capital is worth $56,000,000 today, (*id.* ¶ 28); (2) in 2011, Defendant retired $700,000 of the members' Patronage Capital for the years prior to 1961, (*id.* ¶ 29); (3) Defendant has not made an appropriate Patronage Capital distribution to the members prior to 2011, (*id.* ¶ 30); (4) Defendant has not made an appropriate Patronage Capital distribution to the members since 2011, (*id.* ¶ 31); (5) Defendant has not made an appropriate attempt to locate the 6,000 members who had failed to redeem their Patronage Capital retirement checks in 2011, (*id.* ¶ 32); (6) Defendant is posed to retain a large percentage of the Patronage Capital applicable to years prior to 1961, (*id.* ¶ 33); (7) Defendant acted unethically and/or breached its fiduciary duties by failing to locate the members to whom it wrongly denied Patronage Capital Retirement checks for the past fifty years or longer, (*id.* ¶ 34); (8)

Defendant should not be permitted to claim that the members are unreachable because it has improperly withheld the Patronage Capital Retirement checks for over fifty years and has failed to take reasonable steps to locate the members, (*id.* ¶ 35); and (9) Defendant's failure to adopt a reasonable, workable, and equitable system for returning Patronage Capital to the members constitutes an abdication of its duty to the members, an abuse of discretion, and a breach of its fiduciary duties, (*id.* ¶ 36).

After including class-action allegations, (*id.* ¶¶ 40-43), Plaintiffs assert six claims against Defendant, (*id.* ¶¶ 44-92). In Count I, Plaintiffs assert a claim pursuant to Pennsylvania's Unfair Trade Practices and Consumer Protection Law. (*Id.* ¶¶ 44-58.) In Counts II and III, Plaintiffs assert claims against Defendant for breach of the covenant of good faith and fair dealing and for breach of contract. (*Id.* ¶¶ 57-70.)[1] In Count IV, Plaintiffs assert, in the alternative, a claim against Defendant for unjust enrichment. (*Id.* ¶¶ 71-78.) In Count V, Plaintiffs seek declaratory and injunctive relief. (*Id.* ¶¶ 79-87.) In Count VI, Plaintiffs assert a claim against Defendant for breach of fiduciary duty of an agent or trustee. (*Id.* ¶¶ 88-92.)

On February 18, 2016, Defendant filed a motion to dismiss for failure to state a claim. (ECF No. 10.) On March 1, 2016, Plaintiffs filed the instant motion to remand. (ECF No. 14.) By stipulation on March 7, 2016, the parties agreed that if the motion to remand is denied, Plaintiffs shall have thirty days from the date of the Court's decision to file a response to Defendant's motion to dismiss. (*See* ECF Nos. 16, 17.) Accordingly, the

---

[1] Count II of Plaintiffs' complaint, which should begin as paragraph 59, begins as paragraph 57. (*See id.* ¶¶ 58-64.)

parties having fully briefed Plaintiffs' motion to remand (*see* ECF Nos. 15, 20, 23), the matter is now ripe for disposition.

**IV.    Applicable Law**

Defendant has removed this action pursuant to the federal officer removal statute, which provides:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).  Although the removing defendant bears the burden of proving federal jurisdiction, the Supreme Court "has made clear that the statute must be liberally construed."  *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007) (internal quotations omitted).  The Court of Appeals for the Third Circuit has similarly held that "the federal officer removal statute is to be 'broadly construed' in favor of a federal forum."  *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 467 (3d Cir. 2015) (quoting *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994)).

The federal officer removal statute requires the removing defendant to establish that: (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are

based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office. *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3rd Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129 (1989)).

### III. Discussion

Initially, the Court notes that Plaintiffs do not dispute that Defendant is a "person" within the meaning of the federal officer removal statute. (ECF No. 15 at 9.) However, Plaintiffs argue that this matter must be remanded because: (1) their claims are not based upon Defendant's conduct "acting under" a federal office; (2) Defendant does not raise a colorable federal defense; and (3) Defendant cannot establish that there is a causal nexus between Plaintiffs' claims and Defendant's conduct allegedly performed under color of a federal office. (*Id.* at 10-14.) The Court will separately address Plaintiffs' arguments.

#### A. Defendant's Conduct "Acting Under" a Federal Office

Plaintiffs argue that their claims are not based upon Defendant's conduct "acting under" a federal office. (*Id.* at 10-11.) Because the loan agreement between Defendant and Rural Utilities Service of the United States Department of Agriculture ("RUS") permits Defendant to make Patronage Capital distributions "'greater than or equal to 30% of its Total Assets,'" Plaintiffs assert that Defendant could have paid at least $21,000,000 in Patronage Capital distributions. (*Id.* at 10 (quoting ECF No. 1-2 at 4).) Specifically, Plaintiffs state that because Defendant's 2014 financial statement indicates that its Total Assets were $107,689,090, Defendant could have retired $21,173,169 while remaining in

8

compliance with the RUS loan. (*Id.* at 11.) Plaintiffs further contend that they have suffered prejudice because Defendant attached only two pages of its loan agreement with RUS. (*Id.* at 10.)

In response, Defendant argues that it was formed in furtherance of the federal program of rural electrification. (ECF No. 20 at 7.) After noting that the Rural Electrification Administration, the precursor to RUS, was established in 1935 to initiate and administer the distribution of electric energy in rural areas, Defendant states that it has borrowed money from the United States and has worked hand-in-hand with RUS to achieve the federal goal of extending electricity to rural areas. (*Id.* at 7-8.) Because RUS, pursuant to regulations and contractual provisions, exercises significant control over its operations, Defendant contends that it "acts under" a federal office. (*Id.* at 8-9.) Defendant argues that Plaintiffs' calculations are misplaced because they address the merits of its federal defense, not whether removal is proper. (*Id.* at 9-10.)[2]

In reply, Plaintiffs claim that Defendant's argument that it did not make Patronage Capital distributions because of its loan agreement with RUS equates to complying with the law, not acting under a federal office. (ECF No. 23 at 5-6.) Plaintiffs further argue that Defendant is not acting under a federal office because RUS has no reason to withhold the Patronage Capital distributions from Plaintiffs and Defendant's members. (*Id.* at 6-7.)

To establish that it was "acting under" a federal office, a removing defendant "'must demonstrate that a federal office was the source of the specific act for which the

---

[2] Defendant attached to its response the RUS loan contracts from 2013, 2001, and 2005. (*See* ECF Nos. 20-1, 20-2, 20-3.)

contractor now faces suit.'" *Esser v. CBS Corp.*, No. 15-CV-395, 2016 U.S. Dist. LEXIS 13914, at *5 (D. Del. Feb. 5, 2016) (quoting *Seitz v. Adel Wiggins Group*, 661 F. Supp. 2d 451, 454 (D. Del. 2009)). A person "acting under" a federal office must assist or help carry out the duties or tasks of the federal superior. *See Watson*, 551 U.S. at 152. Stated differently, "[a] defendant acts under a federal officer where his or her actions that led to the lawsuit were based on a federal 'officer's direct orders or comprehensive and detailed regulations.'" *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 784 (E.D. Pa. 2010) (quoting *Good v. Armstrong World Indus.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996)). It is not enough for a defendant to show that "the relevant acts occurred under the general auspices of a federal officer." *Good*, 914 F. Supp. at 1128.

Initially, the Court notes that courts within the Third Circuit have not yet addressed whether rural electric cooperatives act under a federal office. Courts within other jurisdictions, however, have addressed this very issue. *See, e.g.*, *Caver v. Cent. Ala. Elec. Coop.*, No. 15-CV-129, 2015 U.S. Dist. LEXIS 104899, at *5 (S.D. Ala. Aug. 11, 2015); *Davis v. Cent. Ala. Elec. Coop.*, No. 15-CV-131, 2015 U.S. Dist. LEXIS 105056, at *11 (S.D. Ala. Aug. 11, 2015); *Tenn. ex rel. City of Cookeville v. Upper Cumberland Elec. Mbrshp. Corp.*, 256 F. Supp. 2d 754, 758 (M.D. Tenn. 2003).[3] While this Court is not bound by the

---

[3] In its notice of removal, Defendant relies upon *Caver* and *Davis*. (*See* ECF No. 1 ¶ 18.) In their brief in support of their motion to remand, Plaintiffs argue that Defendant's reliance upon *Caver* and *Davis* is misplaced because the cases have been appealed. (ECF No. 15 at 14.) However, the Court's review of the cases' subsequent appellate history reveals that the appeal in *Caver* is pending and that *Davis* was not appealed. Moreover, because the Court relies upon *Caver* and *Davis* as persuasive authority and not as precedential authority, the cases' subsequent appellate history does not constitute a reason for this Court not to avail itself of the reasoning and analysis of the trial court decisions.

decisions of courts in other jurisdictions, the Court finds their analysis persuasive and will rely upon it in analyzing the role and functions of rural electric cooperatives.

"[R]ural electric cooperatives exist to provide a necessary public function conceived and directed by the United States." *Caver*, 2015 U.S. Dist. LEXIS 104899, at *5. In this regard, they "assist the federal government by carrying out the rural electrification program, providing electric power supply and distribution services that RUS would otherwise have to undertake to provide itself." *Id.* at *5-6. The objective of the Rural Electrification Administration "was to provide electricity to those sparsely settled areas which the investor-owned utilities had not found it profitable to service" through the use of non-profit cooperatives. *Salt River Project Agricultural Improvement and Power Dist. v. Fed. Power Comm'n*, 391 F.2d 470, 473 (D.C. Cir. 1968). The Fifth Circuit Court of Appeals has explained that "rural electric cooperatives are something more than public utilities; they are instrumentalities of the United States. They were chosen by Congress for the purpose of bringing abundant, low cost electric energy to rural America." *Alabama Power Co. v. Alabama Elec. Coop., Inc.*, 394 F.2d 672, 677 (5th Cir. 1968) (internal quotations omitted); *see also Fuchs v. Rural Elec. Convenience Coop. Inc.*, 858 F.2d 1210, 1217 (7th Cir. 1988) ("[R]ural electric cooperatives are in some sense instrumentalities of the United States.") (internal quotations omitted).

The well-established role of rural electric cooperatives makes clear that Defendant must assist or help carry out the duties or tasks of RUS. Indeed, Defendant "works hand in hand with RUS to assist that agency in facilitating rural electrification, providing services that otherwise RUS would have to perform in order to fulfill that objective."

*Caver*, 2015 U.S. Dist. LEXIS 104899, at *8. In addition to assisting "RUS in fulfilling its statutory objective," Defendant operates under RUS's close supervision, direction, and control. *See id.* at *9 n.5 (citing regulations that governed the cooperative's relationship with RUS).

In light of the "unusually close and detailed regulatory and contractual relationship" between Defendant and RUS, and in accordance with the liberal construction of 28 U.S.C. § 1442(a)(1), the Court finds that Defendant was acting under a federal office. *See id.* at *10 (finding that the cooperative was "acting under" a federal office); *Davis*, 2015 U.S. Dist. LEXIS 105056, at *11 (same). *See also In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d at 469 (finding that the Federal Community Defender, a non-profit entity created through the Criminal Justice Act that is delegated the authority to provide representation, was acting under a federal office); *Estate of Ware v. Hosp. of the Univ. of Pa.*, 73 F. Supp. 3d 519, 535 (E.D. Pa. 2014) (concluding that the National Space Biomedical Research Institute was acting under a federal office because it performed a service that the National Aeronautics and Space Administration would otherwise have had to perform itself).

### B. Defendant's Colorable Federal Defense

Plaintiffs argue that Defendant does not raise a colorable federal defense because it fails to disclose the federal statutes and regulations that will have an impact on this action. (ECF No. 15 at 12.) Plaintiffs reiterate that Defendant could have made Patronage Capital distributions but refused. (*Id.*)

In response, Defendant argues that it has raised the Rural Electrification Act, 7 U.S.C. § 901 *et seq.*, and 7 C.F.R. § 1717.617, the federal regulation that contains the RUS 30% equity level directive. (ECF No. 20 at 12.) Defendant further asserts that it has a colorable defense of preemption because it is faced "with an impossibility of complying with RUS's regulatory and contractual directives while also complying with [15 Pa.C.S. § 7330] as Plaintiffs interpret it and are seeking to impose upon [Defendant]." (*Id.* at 13.)

In reply, Plaintiffs assert that 15 Pa.C.S. § 7330 does not conflict with federal law because Defendant could have complied with the statute without frustrating the purpose of the federal statutory scheme. (ECF No. 23 at 7-8.) Plaintiffs request that this matter be remanded to the state court because Defendant does not have a conflict preemption defense. (*Id.* at 9.)

Initially, the Court notes that it need not address the parties' arguments regarding whether preemption applies. To establish that a removing defendant has raised a colorable federal defense, it need only "'demonstrate that a federal office was the source of the specific act for which the contractor now faces suit.'" *Esser*, 2016 U.S. Dist. LEXIS 13914, at *5 (quoting *Seitz*, 661 F. Supp. 2d at 454); *see also Cuomo v. Crane Co.*, 771 F.3d 113, 115-16 (2nd Cir. 2014) ("Because a core purpose of the statute is to let the validity of the federal defense be tried in federal court, a defendant seeking removal need not virtually win his case, nor must his defense even be clearly sustainable on the facts.") (internal quotations and citations omitted); *Bell v. Thornburg*, 743 F.3d 84, 89 (5th Cir. 2014) ("[T]he officer seeking removal need not win his case by proving his federal defense before he can have it removed.") (internal quotations and alterations omitted); *Caver*, 2015 U.S. Dist.

13

LEXIS 104899, at *16 (explaining that the removing defendant "need not prove its preemption defense in order for removal to be proper under § 1442(a)(1); rather, defendant's burden is merely to show that such a federal defense is not without foundation and is made in good faith"). The colorable federal defense factor requires "'a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations.'" *Esser*, 2016 U.S. Dist. LEXIS 13914, at *5-6 (quoting *Seitz*, 661 F. Supp. 2d at 454).

Defendant has demonstrated that the acts forming the basis of Plaintiffs' state action were performed pursuant to RUS's direct orders or comprehensive and detailed regulations. As discussed above, Defendant has an "unusually close and detailed regulatory and contractual relationship" with RUS. *Caver*, 2015 U.S. Dist. LEXIS 104899, at *10. *See also Esser*, 2016 U.S. Dist. LEXIS 13914, at *19-25 (concluding that the defendant's federal contractor defense was sufficient for purposes of determining jurisdiction); *Estate of Ware*, 73 F. Supp. 3d at 535 (same).

Moreover, while the Court need not determine whether preemption applies, Plaintiffs have not provided any authority establishing that the Rural Electrification Act does not preempt state regulation of electrical cooperatives. (*See* ECF Nos. 15 at 11-12; 23 at 7-9.) The Court therefore finds that Defendant's preemption defense is "plausible" and satisfies the requirements for removal under 28 U.S.C. § 1442(a)(1). *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d at 474 (finding that the defendant's colorable defense was plausible); *Esser*, 2016 U.S. Dist. LEXIS 13914, at *11-12 (explaining that "a defendant must only put forth a plausible

colorable defense to meet the requirements for removal under Section 1442(a)(1)"). *See also Caver*, 2015 U.S. Dist. LEXIS 104899, at *19 ("Whatever merit [the] preemption defense may or may not ultimately have, the Court is of the opinion that the modest hurdle created by the 'colorable federal defense' requirement of § 1442(a)(1) has been satisfied here."); *Davis*, 2015 U.S. Dist. LEXIS 105056, at *21 (same); *Sparks v. Cullman Elec. Coop.*, No. 4:15-CV-339, 2016 U.S. Dist. LEXIS 31508, at *10 (N.D. Ala. Mar. 11, 2016) (concluding that "the electric cooperatives established a plausible case of preemption"); *Lake v. Marshall-DeKalb Elec. Coop.*, No. 4:15-CV-339, 2015 U.S. Dist. LEXIS 63200, at *8 (N.D. Ala. May 14, 2015) (finding that "[the plaintiff] certainly does not go so far as to show that [the defendant's] federal [preemption] defense does not reach the level of 'colorable'); *Kritner v. Arab Elec. Coop.*, No. 4:15-CV-341, 2015 U.S. Dist. LEXIS 63203, at *8 (N.D. Ala. May 14, 2015) (same); *Tenn. ex rel. City of Cookeville*, 256 F. Supp. 2d at 758 (concluding that "[the plaintiff] has not adequately proven that the 1996 Agreement supersedes any federal preemption issues").

### C. Causal Nexus Between Plaintiffs' Claims and Defendant's Conduct

Plaintiffs argue that there is no causal nexus between their claims and Defendant's conduct because Defendant could have paid Patronage Capital distributions in excess of $21,000,000 while remaining compliant with the RUS loan documents. (ECF No. 15 at 12-13.) Because Defendant has failed to establish that the RUS loan documents prohibited it from making any Patronage Capital distributions, Plaintiffs contend that Defendant has failed to establish a causal nexus between Plaintiffs' claims and its conduct. (*Id.* at 13-14.)

15

In response, Defendant argues that its non-distribution of Patronage Capital to the members was performed under color of a federal office because specific distributions were withheld pursuant to RUS's requirement that it maintain equity in an amount greater than or equal to thirty percent of its total assets. (ECF No. 20 at 14-15.) Defendant therefore contends that there is a causal connection between Plaintiffs' claim and its compliance with federal regulations and the federal RUS loan. (*Id.*) Defendant further asserts that Plaintiff's argument that Defendant could have distributed more than $21,000,000 is meritless because Plaintiffs' claims "seek nothing less than full distribution of the $53 million in unrelated patronage capital," which "fully satisfies the causal nexus requirement." (*Id.*)

In reply, Plaintiffs restate the claims included in their complaint and note that their request for the distribution of $53,000,000 is their request for relief and does not constitute a claim. (ECF No. 23 at 10-11.) Plaintiffs further argue that Defendant's mere compliance with federal law is insufficient to establish that it was acting under color of a federal office. (*Id.* at 11-12.)

Before 2011, "proponents of removal jurisdiction under § 1442 were required to 'demonstrate that the acts for which they [we]re being sued' occurred at least in part '*because of* what they were asked to do by the Government.'" *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d at 471 (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (emphasis and alterations in original)). In 2011, "the statute was amended to encompass suits 'for *or relating to* any act under color of [federal] office.'" *Id.* (quoting 28 U.S.C. § 1442(a)(1) (2011) (emphasis and

16

alterations in original)). In defining the term "relating to," the Third Circuit has explained that its ordinary meaning "is a broad one — 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)). The Third Circuit therefore held that "it is sufficient for there to be a 'connection' or 'association' between the act in question and the federal office." *Id.*

The acts that Plaintiffs complain of in this action "relate to" Defendant's acts taken under color of a federal office. Specifically, Defendant has demonstrated that the acts for which it is being sued occurred because of the conduct that it performed for the RUS. In their complaint, Plaintiffs allege that Defendant violated Pennsylvania law and contractual provisions by failing to refund Patronage Capital to the members. In their removal filings, Defendant has identified "federal direction by which RUS purportedly forbade [it] (in its role as an instrumentality of the United States performing rural electrification services hand-in-hand with RUS) from distributing the very patronage capital refunds that plaintiffs demand in this lawsuit." *Caver*, 2015 U.S. Dist. LEXIS 104899, at *13. If Defendant proves its allegations, they "establish[] the requisite causal connection between the federal direction of [the defendant] (*i.e.*, RUS's purported restriction preventing [the defendant] from making the subject patronage capital refunds) and the acts forming the basis of this lawsuit (*i.e.*, [the defendant's] failure to make such refunds to [P]laintiffs)." *Id.* at *13-14. The Court therefore concludes that there is a causal nexus between Plaintiffs' claims and Defendant's conduct. *Id.* at *13 (concluding that "the low hurdle" of the causal nexus requirement had been satisfied); *Davis*, 2015 U.S. Dist.

LEXIS 105056, at *12-13 (same).  *See also Esser*, 2016 U.S. Dist. LEXIS 13914, at *26 (holding that "a causal nexus exists because [the defendant's] liability arises from its official duties, performed in accordance with government contracts") (internal quotations omitted); *Sparks*, 2016 U.S. Dist. LEXIS 31508, at *11 (concluding that a causal connection existed because the electric cooperatives' argument that preemption applied was plausible); *Lake*, 2015 U.S. Dist. LEXIS 63200, at *12 (finding that a causal connection existed because "when [the defendant] declined to distribute patronage refunds — the acts for which it is being sued — it did so because it 'was asked to do [so] by the Government'"); *Kritner*, 2015 U.S. Dist. LEXIS 63203, at *12 (same); *Estate of Ware*, 73 F. Supp. 3d at 538 (concluding that the acts for which the National Space Biomedical Research Institute "occurred because of what was being performed for the government").

## IV.  Conclusion

For the reasons set forth above, Plaintiffs' motion to remand this matter to state court will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD CESSNA, on behalf of himself and all others similarly situated; and GEORGE WORK, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>REA ENERGY COOPRATIVE, INC.,<br><br>Defendant. | CIVIL ACTION NO. 3:16-42<br><br>JUDGE KIM R. GIBSON |

## ORDER

**AND NOW**, this 21st day of July, 2016, upon consideration of the motion to remand (ECF No. 14) filed by Plaintiffs Leonard Cessna and George Work, on behalf of themselves and all others similarly situated, and upon consideration of the parties' briefing of Plaintiffs' motion (ECF Nos. 15, 20, 23), **IT IS HEREBY ORDERED** that Plaintiffs' motion is **DENIED**. Pursuant to the parties' March 7, 2016, stipulation (see ECF Nos. 16, 17), Plaintiffs shall file a response to Defendant's motion to dismiss on or before August 20, 2016.

BY THE COURT:

*/s/ Kim R. Gibson*

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE